# CRIMINAL COMPLAINT

| United States District Court | DISTRICT of ARIZONA |
|---|---|
| United States of America<br>v.<br><br>Jorge Jimenez<br>DOB: xx/xx/1971<br>U.S. Citizen | **DOCKET NO.**<br><br><br>**MAGISTRATE'S CASE NO.**<br><br>24-06962MJ |

Complaint for violation of Title 18, United States Code §§ 371 and 201(b)(2)(B) and (C)

**COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:**

From a time, unknown, continuing through June 2024, and ending early October 2024, in the District of Arizona, Jorge J. Jimenez, a United States Border Patrol Agent, did knowingly combine, conspire, confederate, and agree with others, known and unknown to commit offenses against the United States, to wit: being a public official, to, directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept things of value, to be influenced to commit and aid in committing, and collude in, and allow, any fraud, and make opportunity for the commission of any fraud, on the United States, and to be induced to do an act in violation of his official duty, that is, money in exchange for providing law enforcement sensitive information and waiving through vehicles he believed to be laden with narcotics, in violation of 18 U.S.C. §§ 371 and 201(b)(2)(B) and (C)

**BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:**

Jorge J. Jimenez is a currently employed United States Border Patrol Agent. At all times relevant to this complaint, he was stationed at the Interstate 19 ("I-19") Checkpoint. His duty, among others was to aid in the U.S. Border Patrol's efforts to interdict illegal narcotics being smuggled into the United States. It is alleged from a time, unknown, continuing through June 2024 and ending early October 2024, in the District of Arizona, Jorge J. Jimenez did conspire with other known and unknown to commit the crime of bribery of a public official.

It was a goal of the conspiracy for Jiminez and the other members of the conspiracy to enrich themselves unlawfully through corrupt means, namely, by accepting things of value from narcotics smugglers seeking to bypass inspection at the I-19 checkpoint, and in exchange performing acts in violation of Jiminez's official duties as a Border Patrol Agent.

The nature of the scheme was that two co-conspirators, identified here as Individual 1 and Individual 2 (collectively, "the coordinators"), located in Mexico, would act as a go-between Jiminez and potential narcotics smugglers for the purposes of scheduling the passing of narcotics loads through the I-19 checkpoint and payment for that service.

**MATERIAL WITNESS(ES) IN RELATION TO THE CHARGE:**

| DETENTION REQUESTED<br><br>*Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge.* | SIGNATURE OF COMPLAINANT<br>ROBERTO V SAENZ<br>2024.11.05 10:38:05 -07'00'<br><br>OFFICIAL TITLE & NAME:<br>SA Roberto Saenz |
|---|---|
| Subscribed to and sworn before me telephonically. | |
| SIGNATURE OF MAGISTRATE JUDGE[1] | **DATE**<br>November 5, 2024 |

[1] See Federal rules of Criminal Procedure Rules 3 and 54

Reviewing AUSA Gordon E. Davenport, III

U.S. v. Jorge Jimenez  
Complaint (Con't)  
pg. 2

24-06962MJ

On the day of a transportation attempt, Jiminez would, while on duty, and dressed in his U.S. Border Patrol uniform, provide real time information as to his lane assignment and the status of the K-9s to the coordinators through electronic communication. One of the coordinators would then relay that to the narcotic trafficker who would then send a vehicle through the identified lane of the checkpoint during the window of time provided by Jiminez. The vehicles would bear previously agreed upon identifying characteristics. Jiminez would then pass those vehicles through his assigned lane without inspection. On at least one occasion, Jiminez then would relay to his co-conspirators (the coordinators) that the passage was successful, who would relay it to the narcotics trafficker.

The price for performing this service would be predicated on amount and type of narcotics. During the conspiracy, co-conspirators represented that Jiminez received a portion of the payment equaling $400/kg. At that rate, it estimated Jiminez received approximately $25,000.

The conspiracy ended shortly after Jiminez was no longer assigned to the checkpoint in early October 2024.

Between June and September 2024, Jorge J. Jimenez waived through at least five vehicles laden with what he believed was a total of 60 kilograms of cocaine. Each load was coordinated through the co-conspirators and largely followed the same pattern. As a part of this coordination, the putative narcotics trafficker was asked to provide a picture of the loaded vehicle that was expected to be passed through Jiminez's assigned lane. On occasion, the coordinators would communicate information by screenshotting their communication with Jiminez and passing the screen shot directly to the putative narcotics trafficker. In one such screenshot, the provided picture of the load vehicle was visible in the conversation between the co-conspirator and Jiminez.

Jiminez would then pass the vehicle through the checkpoint without asking standard questions or referring the vehicle to secondary. To gauge whether Jiminez acted differently towards the loaded vehicles versus unloaded vehicles, agents in unmarked cars passed through Jiminez's assigned lane on the days in question. In each instance he asked the standard Border Patrol check-point questions. He did not ask those same questions to the loaded vehicles.

The bribe payment was collected by couriers recruited by the conspiracy. Couriers were observed by law enforcement going to residences associated with the extended family of the coordinators.

Court-authorized electronic surveillance was able to trace Jiminez's WhatsApp activity on the last three smuggling events. The WhatsApp account identified as Jiminez's

U.S. v. Jorge Jimenez  
Complaint (Con't)  
pg. 3

24-06962MJ

had his picture in the profile and is associated with the cell phone number on file with U.S. Border Patrol personnel records.

In each event, Jiminez would communicate with the co-conspirators before, during, and after the smuggling event. A review of Jiminez's WhatsApp activity shows a spike in communication with the co-conspirators corresponding to each smuggling event. When Jiminez would communicate to the co-conspirators on the day of the event, the co-conspirators would proceed to transmit new information about the activities at the port to the putative drug trafficker. Given the co-conspirators were in Mexico, this information could not have been known to them independently. Agents reviewed the video from the cameras at the checkpoint and were able to corroborate the accuracy of the information being communicated, such as the activities of K-9s and the checkpoint lane Jiminez was assigned and the beginning time of his lane assignment. Further, Jiminez can be seen to be manipulating a small device consistent with the size and shape of a cellphone. WhatsApp records are consistent with the times he is seen manipulating the device. Court-authorized geolocation records corroborated the location of Jiminez's phone during the smuggling events.

On November 4, 2024, law enforcement served a search warrant for Jiminez's phone. Upon execution, a brief manual review search of the phone showed that the above identified WhatsApp account was signed in on the device and that there was an ongoing conversation between Jiminez and one of the co-conspirators. For the period of time that this conspiracy had been active, the contents of the conversations with the co-conspirator had been deleted. However, newer messages indicated that they were playing basketball with a new team that pays up front. The phrase playing basketball was the code used to denote passing a load of narcotics.